*Judgment affirmed.*

---

## BERRY v. THE STATE.

1. No ground of objection to evidence being stated, the alleged error in admitting it is not examinable.
2. The evidence as to the identity of the accused was sufficient, notwithstanding it was possible for the prosecutrix to have been mistaken.
3. As the evidence showed the consummation of the offence of rape, it was not incumbent upon the court to charge the jury on the minor offence of an assault with intent to rape.
4. The so-called newly discovered evidence was not newly discovered; and that the accused did not know of its materiality, and his counsel were ignorant of it as a fact, is not cause for a new trial.

July 13, 1891.　　　　　　　　　　*Judgment affirmed.*

Criminal law. Rape. Evidence. Practice. Charge of court. Before Judge BOYNTON. Henry superior court. October term, 1890.

Berry was convicted of rape, and was sentenced to death. He excepted to the denial of a new trial, the grounds of his motion being as follows : (1) Error in admitting the following testimony of Glass : "Arrested persons (?) on a description given me by Miss Dunn ; Miss Dunn gave me the description"; the effect of which testimony was to put before the jury the declarations made by Miss Dunn the next day after the alleged rape was committed. (2) Verdict contrary to evidence and law, in that the evidence does not sufficiently identify the defendant as the person who committed the crime. (3) Error in failing to charge the jury on the law of an attempt to commit a rape. (4) Newly discovered evidence.

Ann Dunn testified that the crime was committed in the county and in the month charged in the indict-

ment; that the defendant came to her house in that month. " He came to the door and tried to 'get it open; this waked me up. I struck a match and lighted a torch or splinter; he then came round to the other door and broke it open, and come in and grabbed me by the throat and told me if I hollowed he would kill me. He dragged me out of the door. I saw he was going to kill me. He choked me down—choked me to death. I did not know anything until I got back into the house. He done what he wanted to. He choked me down, and first I knew he was getting up. He raped me. I examined myself. He entered my person. I could tell by my feelings when I got up. He was down on the ground choking me. He got my clothes up. Don't have any idea how long he was on me. He helped me up and carried me back into the house and left me lying there. He hurt my throat. No one else was in the house. In about fifteen minutes I got to Mr. Moore's house. It was about twelve o'clock at night. It was about twelve o'clock the next day before I saw him again. I saw him by a light that night before. I never saw him before that night."

Cross-examined: "I am not married. I live at Tunis station on the East Tennessee road. I live about 50 yards from the railroad. It is about 50 yards to the public road. I work for Mr. Moore for a living, and live about 50 yards from him. I went to Mr. Moore and told him what had happened that night after the defendant left. There are some negroes living on Mr. Moore's place. I think the time the thing occurred was at night between ten and twelve o'clock. . . My attention was first by the door opening. I got up, struck a match, and he broke open the other door; when he tried to open the front door a button fell, and I got up and struck a match and light a splinter. I was excited. Just as I lit the splinter he grabbed me;

while I was striking a light he went around to the other door and broke it open. I held the splinter in my hand. The defendant was about two steps from me when I first saw him; he just made two steps and grabbed me. It was a moderately dark night. I did not see him any more that night. . . He was dressed in a blue coat and pants and a cap. . . He said I am going to kill you. I saw the defendant next day at Tunis; he was then in charge of Mr. Glass; when Mr. Glass brought him up, I said that is the negro. He had on the same clothes I saw that night. There was no peculiarity about the negro that differed from other negroes. . . When the negro left me he went in up the railroad towards Atlanta; he was walking. . ."

Moore testified that about ten o'clock that night, or between nine and ten, Ann Dunn came to his house, scared nearly to death, and said a negro had committed rape on her; that her throat was bruised like she had been choked; that the defendant, when he left her house, went across the railroad track in direction of Jonesboro, and he did not go in direction of McDonough where he was arrested; that it is five miles from Tunis to McDonough, and two miles from Tunis to Rock Quarry; and that there were a number of hands employed there at the time of the crime.

Glass, the sheriff, testified: "I arrested John Berry next morning after the night the rape was committed; arrested him here in the depot at McDonough. Several loungers sitting around. I arrested him on the description given me by Miss Dunn. He did not have on a cap when I arrested him; he had on a hat; he had a cap in his bundle when I carried him to Tunis. I searched his bundle; he had an old valise, and the cap fell out a pair of pants legs that were in the valise. I put the cap on his head. Miss Dunn said he was the right negro. When I arrested him he said he had been

at work at the Rock Quarry; the Rock Quarry is about three miles above Tunis. It was about eight or nine o'clock when I arrested him. He said he was waiting to take the freight-train to Juliette. . . He never made any effort or attempt to escape. Miss Glass (Dunn?) did not recognize the defendant at first; but when I put the cap on his head, she then said he was the man. Passengers then sitting around. . . His cap was in the valise in a pair of pants. There were a great many negroes employed at. the Rock Quarry; some of them were bad characters. I suppose he said he had been up there at work, and had been up there to get his money."

Prisoner's statement: "My home is down at Juliette, about 4 miles from Juliette. I had been at work up at the Rock Quarry, and went up there to get my money from Mr. Hall. I could not see the boss-man, and I went back the next day; then he said would not pay off till the end of the quarter; said be next Wednesday or Thursday the pay-train would come along. The cap I had I got from one of the hands; I worked for it; all the hands wore caps. This woman I never saw her before. I did not know nobody up here. I passed Tunis that evening about sundown, and went right on down the railroad track to near the water-tank, and laid down and went to sleep above the depot. We hands all rides on the local, and I was waiting there to take it home. I never saw this woman before. I have got a family in Monroe. I am a farmer and live in Dillard's district—think that's what they call it. Mr. John Chamblin and George Taylor live there."

The newly discovered evidence was by the justice of the peace who presided on the preliminary trial of the defendant. He made affidavit that when he, as a court, was examining Ann Dunn as a witness, he put this question to her: "When John Berry had you down,

did he do what he wanted to?" to which she replied, "He tried to"; and that this was all she swore to on said trial in regard to the defendant entering her person or having any sexual intercourse with her. The defendant's counsel represented him by appointment made on the afternoon of the day before the trial.. They did not know of this testimony of the justice; and though they called for the testimony before the committing court, they were informed that it had not been reduced to writing, as in fact it had not been. The defendant made affidavit that it was not on account of diligence that he did not inform his counsel as to what was sworn on the committing trial, but because, owing to his want of education and ignorance, he did not understand or comprehend the nature or effect of said evidence, and because he did not know that it would have any effect or weight on the trial in the superior court.

BRYAN & DICKEN, LLOYD CLEVELAND and J. H. TURNER, for plaintiff in error.

E. WOMACK, solicitor-general, *contra*.